UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA
Civil No. __-cv-____ (___/___)

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>　　　　　Plaintiff;<br><br>v.<br><br>CITY OF MINNEAPOLIS,<br><br>　　　　　Defendant. | Civil Action No. ___ |

**COMPLAINT**

The United States of America, plaintiff herein, alleges:

1.　Plaintiff the United States of America (United States) brings this action against the City of Minneapolis (City) under the Violent Crime Control and Law Enforcement Act of 1994, 34 U.S.C. § 12601 (Section 12601); Title VI of the 1964 Civil Rights Act, 42 U.S.C. § 2000d (Title VI); the Omnibus Crime Control and Safe Streets Act of 1968, 42 U.S.C. § 3789d (Safe Streets Act), transferred to 34 U.S.C. § 10228; and Title II of the Americans with Disabilities Act of 1990, 42 U.S.C. §§ 12131–12134 (Title II).

## JURISDICTION AND VENUE

2. This Court has jurisdiction of this action pursuant to 28 U.S.C. §§ 1331, 1345, and 2201.

3. The United States is authorized to initiate this suit under Section 12601, Title VI, the Safe Streets Act, and Title II.

4. Under Section 12601, the United States is authorized to bring suit against a state or local government to eliminate a pattern or practice of conduct by law enforcement officers that deprives persons of rights, privileges or immunities secured or protected by the Constitution or federal law.

5. The United States is authorized to enforce Title VI, which together with relevant implementing regulations, prohibits discrimination on the basis of race by recipients of federal financial assistance.

6. The United States is authorized to enforce the Safe Streets Act, which together with relevant implementing regulations, prohibits discrimination on the basis of race by recipients of funds from the U.S. Department of Justice.

7. The United States is authorized to enforce Title II, which requires reasonable modifications to avoid discrimination against individuals with disabilities.

8. Declaratory and injunctive relief is sought as authorized by Section 12601, Title VI, the Safe Streets Act, 28 U.S.C. §§ 2201 and 2202, and Title II.

9. Venue is proper in the District of Minnesota pursuant to 28 U.S.C. § 1391(b). The Defendant is located in the District of Minnesota, and the events giving rise to this claim

occurred in Minneapolis, within the District of Minnesota.

## PARTIES

10. Plaintiff is the United States of America.

11. Defendant City of Minneapolis (City) is a municipality located within the District of Minnesota. The City of Minneapolis is a local government within the scope of Section 12601. The City is responsible for funding the Minneapolis Police Department (MPD) and for the acts or omissions of MPD.

## FACTUAL ALLEGATIONS

12. MPD is the largest law enforcement agency in Minneapolis and has jurisdiction across the City. MPD employs approximately 600 sworn officers.

13. During the course of conduct described in this Complaint, the City has received federal financial assistance from the United States Department of Justice, either directly or through another recipient of federal financial assistance.

14. As a condition of receiving federal financial assistance, the City certified that it would comply with all requirements imposed by Title VI and the federal regulations implementing Title VI. The assurances signed by the City bind subsequent recipients, including MPD, to which the City disburses the funds. The City and MPD are responsible for ensuring that MPD complies with the requirements of Title VI and its implementing regulations.

15. During the course of conduct described in this Complaint, the Defendant has received funds from the Office of Justice Programs (OJP). Recipients of these OJP grants are subject to the requirements of the Safe Streets Act.

16. In May 2020, MPD officer Derek Chauvin murdered George Floyd, while three other MPD officers failed to intervene to save Mr. Floyd. Mr. Floyd's murder followed fatal MPD police shootings, such as the shootings of Jamar Clark in 2015, Justine Ruszczyk in 2017, Thurman Blevins in 2018, and Chiasher Vue in 2019.

17. On April 21, 2021, the Department of Justice announced the opening of a pattern-or-practice investigation into the City and MPD.

18. The United States issued a public Findings Report (Report) on June 16, 2023.

19. In the Report, the United States stated that MPD and the City engage in a pattern or practice of conduct that violates the Constitution and federal laws. The violations identified in the Report include the following:

   a. Using excessive force, in violation of the Fourth Amendment;

   b. Unlawfully discriminating against Black and Native American people in enforcement activities, in violation of the Safe Streets Act and Title VI, and relevant implementing regulations;

   c. Violating the rights of people engaged in protected speech, in violation of the First Amendment; and

   d. Unlawfully discriminating against people with behavioral health disabilities when responding to calls for assistance, in violation of Title II of the ADA.

20. The United States also stated in its Report that MPD's violations of the Constitution and federal law are driven by systemic deficiencies in MPD's accountability systems, training, and supervision.

21. All conditions precedent to the filing of this Complaint have been satisfied. Fed.

4

R. Civ. P. 9(c); 28 C.F.R. Part 35, Subpart F.

### A. Unreasonable Force

22. MPD engages in a pattern or practice of using excessive force, including deadly force, that is objectively unreasonable under the circumstances in which the force is used.

23. The United States' investigation, as detailed in the Report, found the following with respect to MPD's use of unlawful force:

   a. MPD officers' firearms discharges are often unconstitutional uses of force. Officers fail to determine whether there is an immediate threat of harm to the officer or others and fail to provide required advance warnings or consider other people in their line of fire. Officers also discharge firearms against people who are a threat only to themselves or into a moving vehicle;

   b. MPD officers use neck restraints unreasonably;

   c. MPD officers use tasers improperly and in a manner that creates a risk of serious harm;

   d. MPD officers use chemical irritants against individuals engaged in protected First Amendment activity and those not posing a threat; and

   e. MPD officers use unnecessary force against individuals who fail to comply with orders immediately, against those who do not present the requisite threat, against restrained individuals, and against youth under the age of 18.

24. The United States' investigation, as detailed in the Report, found that MPD officers fail to intervene during other MPD officers' unconstitutional uses of force, fail to render medical aid to individuals in custody, and disregard the safety of individuals in custody.

25. The City and MPD have failed to adequately address and rectify these unlawful acts.

        **B.    Discriminatory Policing**

26. MPD engages in a pattern or practice of discrimination through its enforcement strategies and other practices.

27. The United States' investigation, as detailed in the Report, found the following, with respect to MPD's discrimination based on race:

    a. MPD practices of stopping, searching, and using force against Black and Native American people result in stark racial disparities that are not justified by race-neutral factors;

    b. MPD officers patrol differently based on the racial composition of neighborhoods without legitimate reasons;

    c. MPD officers disproportionately stop Black and Native American people, as compared to white people;

    d. MPD officers discriminate during stops when deciding whom to search, conducting more searches during stops involving Black and Native American people than during stops involving white people engaged in similar behavior;

    e. MPD officers use force against Black and Native American people more frequently than against white people engaged in similar behavior; and

    f. MPD officers have used racial slurs and other derogatory language to address or refer to Black and Native American people and have engaged in behavior indicative of racial bias against Black and Native American people.

28. The City and MPD have failed to adequately address and rectify such unlawful racial disparities.

### C. Infringement of First Amendment Rights

29. MPD officers engage in conduct that violates the First Amendment.

30. The United States' investigation, as detailed in the Report, found the following, with respect to MPD's actions during protests:

   a. MPD officers arrest, detain, use or threaten to use force, and otherwise retaliate against individuals who are engaging in constitutionally-protected expression;

   b. MPD officers retaliate against journalists, including by using unconstitutional force, and unlawfully restrict their access to public spaces during protests, including by enforcing general dispersal orders against members of the press;

   c. MPD officers stop, use force against, and arrest individuals for speech that officers perceive to be rude, critical, or disrespectful; and

   d. MPD officers routinely interfere with individuals attempting to lawfully record police activity.

31. MPD has not adequately addressed and rectified these First Amendment violations.

### D. Discrimination Against Individuals with Behavioral Health Disabilities

32. Prior to filing this action, the United States received a complaint of discrimination based on disability by the Minneapolis Police Department and City of Minneapolis. 28 C.F.R. §§ 35.104 & 35.170-71. Following an investigation under Title II of the ADA, the United States notified the City of its conclusion that the City and MPD regularly discriminate against

individuals with behavioral health disabilities when providing emergency response services in violation of the ADA. These individuals are qualified persons with disabilities under the ADA. 42 U.S.C. § 12131(2).

33. Title II of the ADA prohibits discrimination against people with disabilities, including by excluding them from participation in or denying them the benefits of city services, programs, and activities. 42 U.S.C. § 12132. Individuals with behavioral health disabilities must be able "to participate in or benefit from" the City's services, programs, and activities to an extent "equal to that afforded others," and that is equally "effective in affording equal opportunity to obtain the same result." 28 C.F.R. § 35.130(b)(1)(ii)-(iii). The Defendant must make "reasonable modifications" to policies, practices, or procedures, if necessary to avoid discrimination against individuals with disabilities. 28 C.F.R. § 36.302(a).

34. The United States' investigation, as detailed in the Report, found the following, with respect to unnecessary law enforcement responses to people with behavioral health disabilities:

   a. MPD has historically been the primary, if not sole responder to behavioral health-related calls for service in Minneapolis, even where the call involves no violence, weapon, or immediate threat of harm. Many of these calls could be safely and more effectively resolved through a response by behavioral health staff;

   b. Unnecessary MPD response to people with behavioral health disabilities is often ineffective and harmful;

   c. MPD officers receive flawed and inadequate training on behavioral health

8

    disabilities, contributing to persistent biases that can result in unnecessary arrests and uses of force; and

   d. The City's Metropolitan Emergency Communications Center, which receives calls for and dispatches responses to calls for service, has policies and practices that result in needless law enforcement responses to people with behavioral health disabilities experiencing behavioral health-related emergencies. In contrast, the City sends medical professionals to people experiencing medical-related emergencies.

35. The City's and MPD's policies and practices result in people with behavioral health disabilities being excluded from participation in, and denied the benefits of, Minneapolis's emergency response program and services, in violation of federal law. In violation of the ADA, the City denies people with behavioral health disabilities an equal opportunity to participate in or benefit from these services and does not afford equal opportunity to people with behavioral health disabilities to obtain the same result as that provided to others.

36. The City and MPD can make reasonable modifications required by the ADA to avoid discrimination against individuals with behavioral health disabilities.

   **E. Accountability, Training, and Supervision**

37. The United States' investigation, as detailed in the Report, described the City's deficient accountability systems, training, and supervision as factors that contribute to MPD's violations of the Constitution and federal law.

38. MPD has not adequately addressed and rectified these factors that contribute the violations the United States described in its Report.

## FIRST CLAIM FOR RELIEF

### DEFENDANT'S PATTERN OR PRACTICE OF CONDUCT DEPRIVES INDIVIDUALS OF CONSTITUTIONAL AND FEDERAL RIGHTS UNDER THE FIRST, FOURTH, AND FOURTEENTH AMENDMENTS, TITLE II, TITLE VI, AND THE SAFE STREETS ACT, IN VIOLATION OF § 12601

39. The United States re-alleges and incorporates by reference all the allegations set forth in paragraphs 1-38.

40. The First Amendment to the United States Constitution, applied to the states through the Fourteenth Amendment, provides in pertinent part that "Congress shall make no law . . . abridging the freedom of speech, or of the press; or the right of the people peaceably to assemble . . . ."

41. The Fourth Amendment to the United States Constitution provides that "[t]he right of the people to be secure in their persons, house, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized."

42. Section II of the Fourteenth Amendment provides that "[n]o state shall deprive any person of life, liberty, or property, without due process of law; nor deny any person within its jurisdiction equal protection of the laws."

43. Title II of the Americans with Disabilities Act provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." Defendant is a public entity subject to Title II

of the ADA, 42 U.S.C. § 12131(1).

44. Title VI of the Civil Rights Act of 1964 provides that "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." The Defendant receives federal financial assistance and is subject to Title VI requirements.

45. The Safe Streets Act provides that "[n]o person in any State shall on the ground of race, color, religion, national origin, or sex be excluded from participation in, be denied the benefits of, or be subjected to discrimination under or denied employment in connection with any programs or activity funded in whole or in part with funds made available under this title." The Defendant receives funding from the U.S. Department of Justice and is subject to the Safe Streets Act requirements.

46. By the actions and omissions set forth above, the Defendant and its agents have engaged and continue to engage in a pattern or practice of conduct that deprives persons of rights, privileges, or immunities secured or protected by the First, Fourth, and Fourteenth Amendments to the United States Constitution, Title II of the Americans with Disabilities Act, Title VI of the Civil Rights Act of 1964, and the Safe Streets Act, in violation of Section 12601.

47. Unless restrained by this Court, the Defendant will continue to engage in the unconstitutional and illegal conduct alleged herein, or other similar unconstitutional or illegal conduct, causing irreparable harm.

## SECOND CLAIM FOR RELIEF

**DEFENDANT'S LAW ENFORCEMENT ACTVITIES VIOLATE THE SAFE STREETS ACT**

48.     The United States re-alleges and incorporates by reference all the allegations set forth in paragraphs 1-38.

49.     The Safe Streets Act provides that "[n]o person in any State shall on the ground of race, color, religion, national origin, or sex be excluded from participation in, be denied the benefits of, or be subjected to discrimination under or denied employment in connection with any programs or activity funded in whole or in part with funds made available under this title."

50.     The Defendant received and continues to receive funds from the Office of Justice Programs that are subject to the Safe Streets Act.

51.     The Defendant has engaged in a pattern or practice of law enforcement practices in violation of the Safe Streets Act, including stops, searches, arrests, and uses of force, that have an adverse disparate impact on Black and Native American people and that are unnecessary to achieve non-discriminatory objectives.

52.     The United States has determined that all administrative prerequisites to this lawsuit have been satisfied and that compliance cannot be secured by voluntary means.

53.     The Defendant's discriminatory law enforcement practices violate the Safe Streets Act.

## THIRD CLAIM FOR RELIEF

**DEFENDANT'S LAW ENFORCEMENT ACTIVITIES VIOLATE TITLE VI**

54.     The United States re-alleges and incorporates by reference all the allegations set

forth in paragraphs 1-38.

55.    Title VI provides that "[n]o person in the United States shall, on the ground of race, color, or national origin, be excluded from participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance."

56.    The Defendant received and continues to receive federal financial assistance for its programs and activities that are subject to the requirements of Title VI and its implementing regulations.

57.    The Defendant has engaged in law enforcement practices in violation of Title VI, including stops, searches, arrests, and uses of force, that have an adverse disparate impact on Black and Native American people and that are unnecessary to achieve non-discriminatory objectives.

58.    The United States has determined that all statutory and regulatory prerequisites for this lawsuit have been satisfied and that compliance cannot be secured by voluntary means.

59.    Defendant's discriminatory law enforcement practices violate Title VI.

## FOURTH CLAIM FOR RELIEF

**DEFENDANT VIOLATES TITLE II OF THE AMERICANS WITH DISABILITIES ACT**

60.    The United States re-alleges and incorporates by reference all the allegations set forth in paragraphs 1-38.

61.    Title II of the Americans with Disabilities Act provides that "no qualified individual with a disability shall, by reason of such disability, be excluded from participation

in or be denied the benefits of the services, programs, or activities of a public entity, or be subjected to discrimination by any such entity." 42 U.S.C. § 12132.

62. The Defendant is a public entity subject to Title II of the ADA, 42 U.S.C. § 12131(1).

63. The Defendant, through the operation of their emergency response program, denies the benefits of this program to people with behavioral health disabilities and subjects people with behavioral health disabilities to discrimination.

64. The Defendant could make reasonable modifications required by the ADA and its implementing regulations to avoid discrimination against individuals with behavioral health disabilities, but the Defendant has repeatedly failed to make such modifications necessary to avoid discrimination against individuals with behavioral health disabilities.

65. The United States has determined that all statutory and regulatory prerequisites to this lawsuit have been satisfied and that Defendant's compliance cannot be secured by voluntary means.

66. The Defendant's actions constitute discrimination in violation of Title II of the ADA, 42 U.SC. § 12132, and its implementing regulations, 28 C.F.R. 35.

## **PRAYER FOR RELIEF**

67. WHEREFORE, the United States asks that the Court:
    a. Declare that the Defendant, its officers, agents, and employees have engaged in a pattern or practice of conduct that deprives persons of rights, privileges, or immunities secured or protected by the Constitution or laws of the United

States, in violation of § 12601;

b. Declare that the Defendant, its officers, agents, and employees have violated the Safe Streets Act;

c. Declare that Defendant, its officers, agents, and employees have violated Title VI;

d. Declare that Defendant, its officers, agents, and employees have violated Title II of the ADA;

e. Enjoin the Defendant, its officers, agents, and employees from engaging in any of the predicate acts forming the basis of the pattern or practice of conduct and violations of Title VI and the Safe Streets Act;

f. Order the Defendant, its officers, agents, and employees to adopt and implement policies, training, accountability systems, and practices to remedy the constitutional and statutory violations described herein, and to prevent the Defendant, its officers, agents, and employees from depriving persons of rights, privileges, or immunities secured or protected by the Constitution or laws of the United States; and

g. Order such other appropriate relief as the interests of justice may require.

DATED: January 6, 2025

Respectfully submitted,

*United States of America Counsel*

KRISTEN CLARKE
Assistant Attorney General
Civil Rights Division

REGAN RUSH
Chief, Special Litigation Section
Civil Rights Division

CYNTHIA COE
Deputy Chief, Special Litigation Section
Civil Rights Division

*s/ Katie Chamblee-Ryan*
KATIE CHAMBLEE-RYAN
PATRICK KENT
DANA PAIKOWSKY
LILY SAWYER-KAPLAN
AMY SENIER
Trial Attorneys, Special Litigation Section
Civil Rights Division

ANA VOSS
Chief, Civil Division
*Attorney for the United States Acting Under Authority Conferred by 28 U.S.C. § 515*

*s/ Bahram Samie*
BY: BAHRAM SAMIE (#0392645)
Deputy Chief, Civil Division
KRISTEN E. RAU (#0397907)
Assistant U.S. Attorney
United States Attorney's Office
District of Minnesota
300 S. 4th Street
Minneapolis, MN 55415
(612) 664-5600
bahram.samie@usdoj.gov