UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

| | |
|---|---|
| United States of America, | Case No. 25-cv-48 (PAM/DLM) |
| Plaintiff, | SECOND AMICUS BRIEF OF COMMUNITIES UNITED AGAINST POLICE BRUTALITY |
| vs. | |
| City of Minneapolis, | |
| Defendant. | |

## INTRODUCTION

Before the Court is the Motion to Dismiss and to Hold Proceedings in Abeyance Pending Resolution of this Motion (the "Motion to Dismiss") filed by Plaintiff United States of America ("United States"). Communities United Against Police Brutality ("CUAPB") urges the Court to deny the Motion to Dismiss. The Consent Decree represents a critical and necessary framework for reforming the Minneapolis Police Department ("MPD") following the extensive investigation by the Department of Justice ("DOJ") that found systemic constitutional violations. Dismissal of the Consent Decree would harm the public interest, undermine the rule of law, and obstruct much-needed reforms that the City of Minneapolis (the "City") itself supports.

## ARGUMENT

### I. Dismissal of the Consent Decree Would Harm the Public Interest and Undermine Reform Efforts

The Consent Decree was finalized after a thorough two-year investigation by the DOJ, which found that MPD engages in a pattern or practice of conduct that violates the

1

First, Fourth, and Fourteenth Amendments of the Constitution, as well as federal anti-discrimination laws. The findings documented excessive force, racially discriminatory policing, violations of First Amendment rights, and discrimination against people with disabilities.

These violations are not theoretical; they have caused real harm to residents of and visitors to Minneapolis, including members or supporters of CUAPB. The Consent Decree provides a comprehensive roadmap to address these deeply-rooted problems through concrete reforms. Significant resources have already been devoted to this effort, including the selection of an independent monitoring team. Dismissing the Consent Decree at this stage would waste these resources and nullify the significant progress made.

Most important, dismissing the Consent Decree would leave people who reside in or visit Minneapolis without the protections and reforms necessary to ensure constitutional policing. The City itself has acknowledged the need for these reforms, recognizing that the Consent Decree would serve the interests of both the City government and its residents. The people of Minneapolis should not have to repeatedly pay for significant police misconduct settlements and verdicts through their tax dollars. *Declaration of Tim Phillips ("Phillips Decl."), Ex. 1* (stating that "the total taxpayer outlay" for Minneapolis police misconduct verdicts and settlements since 2006 has been more that $94 million). Nor should so many people in Minneapolis live in fear of interactions with law enforcement, which can and quickly have turned to the use of excessive force.

## II. A Change in Presidential Administration is Not a Valid Basis for Dismissing an Agreed-Upon Consent Decree

The United States' apparent basis for seeking dismissal—a change in presidential administration—does not constitute a legitimate reason to abandon a settlement agreement that was reached after extensive investigation and negotiation. The Consent Decree is not a mere policy preference that can be discarded with each new administration; it is a judicial remedy, to which the United States previously agreed to be bound, for documented constitutional violations.

The Motion to Dismiss appears to be motivated by shifting political considerations rather than by changed factual circumstances or legal developments that would justify abandonment of the agreement. A politically-motivated Motion to Dismiss, if granted by the Court, would set a dangerous precedent that undermines the stability and predictability of judicial remedies for civil rights violations. It would also allow the United States to settle matters and then renege on agreements if or when it chooses.

## III. The Court has the Authority and Discretion to Deny the Motion to Dismiss

When this Court approves the Consent Decree, it will become a court order. This Court will retain jurisdiction to enforce the Consent Decree and discretion to determine whether dismissal would serve the public interest and the interests of justice at any point in the future.

The Court should consider that both the City and community stakeholders—the parties most directly affected by the reforms—oppose dismissal of the Consent Decree. The Court should give substantial weight to the City's position that even though the

3

United States wishes to renege on its agreement to the Consent Decree, the Consent Decree would and will serve an important remedial purpose.

## IV. Community Stakeholders have a Strong Interest in the Approval of the Consent Decree

As CUAPB emphasized in its first amicus brief, meaningful community involvement is essential to the success of police reform efforts. Dismissal of the Consent Decree would eliminate the formal mechanisms for community input that have been established in the agreed-upon Consent Decree. It would silence the voices of those most affected by policing practices in Minneapolis, particularly people from Black communities, Indigenous communities, and other communities of color that have disproportionately experienced unconstitutional policing. *See Phillips Decl., Ex. 2*.

The Consent Decree includes critical provisions for transparency, data collection, and public reporting that allow both monitoring of the progress of MPD and holding MPD accountable. Dismissal of the Consent Decree would eliminate these vital transparency mechanisms and return the city to a system where police practices are shielded from public scrutiny.

## V. The Consent Decree's Reforms Address Persistent Constitutional Violations that Remain Unresolved

The underlying constitutional violations that necessitated the Consent Decree have not been remedied. The systemic changes required will take years to fully implement. Dismissal of the Consent Decree would abandon reform efforts before they have had a chance to take effect.

The findings from the June 2023 report from the DOJ, combined with the following lawsuits filed by people who were subjected to constitutional violations by MPD, support CUAPB's position. These lawsuits do not reflect all constitutional violations by MPD officers in recent history; this long list is limited to violations that occurred at or in connection with the May 2020 protests in Minneapolis following the murder of George Floyd.

- On May 26, 2020, the day after MPD officers murdered George Floyd, an MPD officer fired a 40mm round that struck Muna Ahmed in the head, knocking her unconscious. *Phillips Decl., Ex. 10, Ahmed Complaint*. The City settled this case for $245,000. *Phillips Decl., Ex. 11, Ahmed Settlement*.

- On May 27, 2020, an MPD officer fired a 40mm round that struck Ana Maria Gelhaye in her right eye, causing a permanent injury. *Phillips Decl., Ex. 12, Gelhaye Complaint*. The City settled this case for $900,000. *Phillips Decl., Ex. 13, Gelhaye Settlement*.

- Also on May 27, 2020, an MPD officer fired a 40mm round that struck Jamie Bunkholt in the back of the head, causing a traumatic injury. *Phillips Decl., Ex. 14, Bunkholt Complaint*. The City settled this case for $500,000. *Phillips Decl., Ex. 15, Bunkholt Settlement*.

- Also on May 27, 2020, an MPD officer fired a 40mm round that struck David Laliberte in the face, causing a permanent injury. *Phillips Decl., Ex. 16, Laliberte*

- *Complaint*. The City settled this case for $65,000. *Phillips Decl., Ex. 17, Laliberte Settlement.*

- Also on May 27, 2020, an MPD officer fired a 40mm round that struck Abdi Adam in the forehead, causing neurological injuries. *Phillips Decl., Ex. 49, Adam Complaint*. The City settled this case for $365,000. *Phillips Decl., Ex. 51, Adam Settlement.*

- Also on May 27, 2020, at approximately 7:17 p.m., MPD Officer Jeffrey Pennaz shot Ewan Leask in the head with a 40mm round, causing a mild traumatic brain injury and post-concussion syndrome. *Phillips Decl., Ex. 7, Leask Complaint.* An appeal in this case will be heard by the Eighth Circuit later this year.

- On May 28, 2020, MPD Officer Benjamin Bauer shot Ethan Marks in the eye with a 40mm round, blinding Marks in that eye. *Phillips Decl., Ex. 19, Marks Complaint*. Judge Montgomery denied summary judgment and the Eighth Circuit affirmed.

- Also on May 28, 2020, an MPD officer fired a 40mm round that struck Norman Truman in the head, causing a fractured skull, a traumatic brain injury, and an internal brain hemorrhage. *Phillips Decl., Ex. 20, Truman Complaint*. The City settled this case for $15,000. *Phillips Decl., Ex. 21, Truman Settlement*.

- Also on May 28, 2020, an MPD officer deployed a less-lethal munition that struck Kimani Allen. *Phillips Decl., Ex. 22, Allen Complaint*. The City settled this case for $22,000. *Phillips Decl., Ex. 23, Allen Settlement*.

- Also on May 28, 2020, MPD Officer Oscar Macias shot Hillary Richard with a 40mm round in the wrist while her hands were raised beside her head and she was serving as a Legal Observer with the National Lawyers Guild. *Phillips Decl., Ex. 24, Richard Complaint*. The City settled this case for $45,000. *Phillips Decl., Ex. 25, Richard Settlement.*

- On May 29, 2020, an MPD officer shot Graciela Cisneros in the face with a 40mm round. *Phillips Decl., Ex. 26, Cisneros Complaint*. The City settled this case for $57,900. *Phillips Decl., Ex. 27, Cisneros Settlement.*

- On or about May 29, 2020, an MPD officer fired a 40mm round that struck journalist Linda Tirado in the eye, blinding Tirado in that eye. *Phillips Decl., Ex. 28, Tirado Complaint*. The City settled this case for $600,000. *Phillips Decl., Ex. 29, Tirado Settlement.*

- On May 30, 2020, Samantha Wright was shot in the eye with a 40mm round by MPD Officer Oscar Macias – the same officer who shot Hillary Richard while her hands were raised two days before – at 12:48 a.m., causing a permanent injury requiring surgery. *Phillips Decl., Ex. 30, Wright Complaint*. The City settled this case for $900,000. *Phillips Decl., Ex. 31, Wright Settlement.*

- Also on May 30, 2020, approximately 18 minutes after Samantha Wright was shot in the eye with a 40mm round by MPD Officer Oscar Macias, an MPD officer shot Raven Bartz in the head with a 40mm round. *Phillips Decl., Ex. 18, Bartz Complaint*. An appeal in this case was heard by the Eighth Circuit on May 13, 2025.

- Also on May 30, 2020, an MPD officer fired a 40mm round that struck Autumn Larson in the face. *Phillips Decl., Ex. 32, Larson Complaint*. The City settled this case for $45,000. *Phillips Decl., Ex. 33, Larson Settlement.*

- Also on May 30, 2020, MPD officers falsely arrested and used excessive force on Costas Ombuna and Jazzlyn Brown. *Phillips Decl., Ex. 34, Ombuna and Brown Complaint*. The City settled this case for $75,000. *Phillips Decl., Ex. 35, Ombuna and Brown Settlement.*

- Also on May 30, 2020, while Assad Awaijane, Robert Awaijane, Anisse Campbell, Darius Campbell, Wayne Green, and Merrick Jackson were protecting a family business that had recently been looted during the civil unrest following the murder of George Floyd, MPD officers shot at them with 40mm rounds and sprayed them with tear gas. *Phillips Decl., Ex. 50, Awaijane, et al. Complaint*. Judge Montgomery denied a motion for judgment on the pleadings filed by three officers who were present during the incident but were not alleged to have used force themselves. *Awaijane, et al. v. Bittell, et al.*, 23-CV-2892 (ADM/JFD) (D. Minn. May 16, 2024). This case is ongoing.

- Also on May 30, an MPD officer shot Brenda Smith in the foot with a 40mm round, causing a broken toe and injured ankle joints and ligaments requiring surgery. *Phillips Decl., Ex. 8, Smith Complaint*. The City settled this case for $100,000. *Phillips Decl., Ex. 9, Smith Settlement.*

- Also on May 30, 2020, MPD officers arrested Virgil Jackson; and the manner in which they arrested Jackson violated the Fourth Amendment, as he was Tased and

beaten with no justification. *Phillips Decl., Ex. 36, Jackson Complaint*. The City settled this case for $645,000. *Phillips Decl., Ex. 37, Jackson Settlement.*

- At the same time and location that Jackson was Tased and beaten, the manner in which MPD Officer Justin Stetson and MPD Sergeant Andrew Bittell arrested Jaleel Stallings on May 30, 2020 violated the Fourth Amendment. *Phillips Decl., Ex. 38, Stallings Complaint*. Stallings was wrongfully prosecuted for attempted murder and acquitted by a jury. *Id*. Stallings accepted a damages-only Rule 68 offer of $1,500,000. *Phillips Decl., Ex. 39, Stallings Judgment.*

- On May 31, 2020, MPD officers fired 40mm rounds at Scott Meyer. *Phillips Decl., Ex. 40, Meyer Complaint.* The City settled this case for $75,000. *Phillips Decl., Ex. 41, Meyer Settlement.*

- Also on May 31, 2020, MPD officers yanked Ericka Khounedaleth from her car at gunpoint and pushed her to the pavement. *Phillips Decl., Ex. 3, Khounedaleth Complaint*. The City settled this case for approximately $32,314. *Phillips Decl., Ex. 4, Khounedaleth Settlement*.

- Also on May 31, 2020, MPD Officer Benjamin Bauer – the same officer who blinded Ethan Marks in one eye three days before – shot Soren Stevenson in the eye with a 40mm round, blinding Stevenson in that eye. *Phillips Decl., Ex. 42, Stevenson Complaint*. Stevenson accepted a damages-only Rule 68 offer of $2,400,000. *Phillips Decl., Ex. 43, Stevenson Judgment*.

- According to the allegations in the lawsuits referenced above, none of the plaintiffs were engaged in an assault or damage to property at or around the time

- they were struck with one or more 40mm rounds that warranted the level of force used on them.
- At least three putative class action lawsuits were also filed against the City and other defendants related to police misconduct that occurred in the days following the murder of George Floyd: *Samaha, et al. v. City of Minneapolis* (regarding attacks on protesters), *Phillips Decl., Ex. 44, Samaha Complaint*; *Armstrong, et al. v. City of Minneapolis* (same), *Phillips Decl., Ex. 45, Armstrong Complaint*; and *Goyette, et al. v. City of Minneapolis* (regarding attacks on journalists), *Phillips Decl., Ex. 46, Goyette Complaint*. The City settled the *Samaha* and *Armstrong* cases for a total of $600,000. *Phillips Decl., Ex. 47, Samaha and Armstrong Settlement*. The City settled the *Goyette* case for $950,000. *Phillips Decl., Ex. 48, Goyette Settlement.*

* * *

These lawsuits are a matter of public record and highly relevant to the Court's analysis. *See*, *e.g.*, *Osterhoudt v. City of New York*, No. 10-CV-3173, 2012 WL 4481927, at *1 (E.D.N.Y. Sept. 27, 2012) (stating that "it is hard to ignore these cases, which suggest that the conduct complained of is not limited to the four corners of [the plaintiff's] complaint").

Recent incidents show that the problems with MPD continue. On October 23, 2024, a Black resident of Minneapolis, David Moturi, was shot by his white neighbor, John Sawchak, after Moturi had called MPD at least 19 times, over a period of several months, and emailed the police chief about Sawchak's threats of violence. *See Phillips*

*Decl., Ex. 5*. More recently, on March 25, 2025, five MPD officers entered a family's home, apparently unlawfully, in the middle of the night related to a dog that had escaped from the property. *See Phillips Decl., Ex. 6*.

Much work remains to be done. Dismissing the Consent Decree now would leave in place the same conditions that led to the DOJ's findings of widespread constitutional violations.

## CONCLUSION

For the reasons stated above, CUAPB urges this Court to deny the United States' Motion to Dismiss the Consent Decree. The people of Minneapolis deserve constitutional policing practices, and the Consent Decree provides the necessary framework to achieve this goal. A change in presidential administration does not justify abandoning this critical reform process, particularly when the City and community stakeholders remain committed to its implementation.

Date: May 21, 2025

LAW OFFICE OF TIM PHILLIPS

By s/*Tim Phillips*
TIM PHILLIPS
Attorney License No. 390907
Law Office of Tim Phillips
331 Second Avenue South, Suite 400
Minneapolis, MN 55401
Tel: (612) 470-7179
Email: tim@timphillipslaw.com

Attorney for Communities United Against Police Brutality